UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MICHAEL BUTLER )
)
v. ) NO. 2:04-CV-155
)
CLYDE CROY )
)

**MEMORANDUM OPINION**

This plaintiff's § 1983 complaint is before the Court on the defendant's motion for summary judgment. [Doc. 18]. Plaintiff alleges in his complaint that he was arrested without probable cause and subjected to excessive force in violation of the Fourth Amendment, all pursuant to 42 *U.S.C.* § 1983. In addition, the plaintiff has asserted State law tort claims of false imprisonment/false arrest and battery.

I. **FACTUAL BACKGROUND:**

Viewing the facts in the light most favorable to the plaintiff, the following sets forth the factual background of this dispute:

The plaintiff, Michael Butler("Butler"), is a Johnson City Police officer with 18 years of law enforcement experience. On October 2, 2003 Butler gave a ride to a friend, Jeff Grindstaff, to pick up a television set at Grindstaff's

father's residence.[1]  The plaintiff was not in uniform, and was driving an unmarked pick-up truck.  Grindstaff had recently become embroiled in a domestic dispute with his father and step-brother, and sometime prior to October 2, 2003, the father and step-brother had taken out *ex parte* orders of protection against Grindstaff, though the orders had not yet been served on him.

While Butler and Grindstaff were picking up the television, Grindstaff's step-brother arrived.  The step-brother contacted 911, told the dispatcher about the unserved orders of protection, told the dispatcher that Grindstaff was just leaving his father's residence, and provided a description of the vehicle and tag number.

The defendant, Clyde Croy("Croy"), an Elizabethton, Tennessee police captain, heard the dispatch from his patrol car and spotted the vehicle.  Before he pulled over the vehicle, Croy was also advised that there was an outstanding arrest warrant for Jeff Grindstaff for violation of probation. Croy initiated a traffic stop, pulled Butler over in the parking lot of the Creekside Market, approached the vehicle, and told Butler to "shut the motor off and get out of the car."  Butler asked Croy what was going on and identified himself.  Croy again ordered Butler out of his vehicle.  Butler complied and was told him to place his hands on the roof of the pick-up.  Croy then changed his mind, and said "no just put them behind your

---

[1] Jeff Grindstaff was previously a plaintiff in this action, but has since voluntarily dismissed his complaint.

back." Croy then placed handcuffs on Butler, and told him he was under arrest pursuant to an outstanding warrant. Once he was handcuffed, Butler was led back to Croy's cruiser. Butler remained standing outside the cruiser while Croy made a call on his radio.

After speaking on the radio for some time, Croy assented to Butler's request that he remove the handcuffs so that he could provide him with identification. After examining Butler's identification, he inquired about the passenger in Butler's vehicle. Butler replied that the passenger was "Jeff Grindstaff." Croy responded that Grindstaff was who he was looking for. It is undisputed that Grindstaff was slumped down in the passenger seat, and that Croy initially mistook Butler for Grindstaff.

Croy then approached Jeff Grindstaff and told him that he intended to serve two orders of protection and a "violation of probation" warrant on him. Grindstaff was handcuffed and placed in the back seat of Croy's cruiser. Croy then told Butler to "go on," and Butler left. It was later determined that the Jeff Grindstaff arrested by Croy that day was not the same Jeff Grindstaff for whom the violation of probation warrant had been issued.

At most, Butler was handcuffed for 15 minutes. Butler testified that if Croy actually believed that Butler was Jeff Grindstaff, then it was

3

appropriate for Croy to order Butler out of his vehicle.

During a roll-call approximately two weeks prior to the traffic stop, Croy had been warned to use caution if he responded to a call at the Grindstaff residence because Jeff Grindstaff had assaulted his father and brother, and had tried to commit suicide. Croy had been warned that there was a probability for harm at the residence.

## II. **STANDARD OF REVIEW:**

Summary judgment is appropriate when "there is no genuine issue of material fact." *Fed.R.Civ.P.* 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the plaintiff

4

because he is the litigant opposing summary judgment. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott*,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>*." Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). See also *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994). (emphasis added)

*Id*. at 871.

III. **DISCUSSION:**

The defendant submits that he is entitled to qualified immunity from the plaintiff's claims.

> In determining an officer's entitlement to qualified immunity we follow a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First taken in the light most favorable to the plaintiff, we decide whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201, 121 S. Ct. 2151. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, we next ask whether the right was clearly established. *Id.*

5

*Vakilian v. Shaw*, 335 F. 3d 509 (6th Cir. 2003). In general, government officials performing discretionary functions, are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986). The relevant question for the Court is not the subjective intent of the defendant, but whether a reasonable officer would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640.

    The undisputed facts before the Court lead to the unmistakable conclusion that Captain Croy believed, when he handcuffed Officer Butler, that Butler was in fact Grindstaff. Even Butler concedes that Captain Croy honestly believed that Butler was actually Grindstaff. The plaintiff submits that it is simply ludicrous to believe that the defendant did not know that there was a passenger in the truck, and thus should have known that either might be Grindstaff. However, there is nothing in the record to establish that Captain Croy saw the passenger nor that he had any reason to believe that the passenger was actually Grindstaff.

The record establishes that Captain Croy had approached the vehicle from the driver's side of the truck staying slightly back from the driver's side door such that Officer Butler had to turn to see Captain Croy. Officer Butler testified that this was the "officer safety position" and that he does the same thing when approaching a vehicle. Additionally, it is undisputed that Grindstaff was slumped down in his seat, having the seat reclined and leaning over to the right. Further, there was a large television in the back of the truck. With Gindstaff in that position, it is reasonable to believe that an officer who approached the vehicle from behind, and stayed slightly back away from the driver's door, would not have noticed the passenger.

Captain Croy had been informed that the Jeff Grindstaff for whom warrants had been issued was in this particular vehicle. The defendant makes much of the fact that Grindstaff's step-brother had apparently only informed the dispatcher about the unserved orders of protection, not a violation of probation warrant, and that had Captain Croy run the license tag on Officer Butler's truck, he would have learned that the truck did not belong to Grindstaff. Nevertheless, Captain Croy had been informed by the dispatcher of an outstanding warrant for Grindstaff's arrest, that Grindstaff would be in that vehicle, and had been informed at a roll call that Jeff Grindstaff would likely be dangerous. There is no proof before the Court that

7

Captain Croy had the warrant in hand when he arrested the suspect, and he had no reason to look behind the information he had received from his dispatcher.

Additionally, there is nothing about Officer Butler which would have outwardly indicated that he was a fellow police officer. The fact that Officer Butler told Captain Croy that he was a police officer did not require him to forego his arrest, or to immediately check his identification.

> A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause . . . as the Supreme Court held in *Baker v. McCollan*, 443 U.S. 137, 145-46, 99 S. Ct. 2689, 2694-96, 61 L. Ed. 2d 433 (1979): The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant aquitted – indeed for every suspect released.

*Criss v. City of Kent*, 867 F. 2d 259, 263 (6th Cir. 1988). In short, this Court simply cannot find that Captain Croy acted in a manner that is objectively legally unreasonable when he arrested Officer Butler.

Officer Butler's sole claim that he was subjected to excessive force in violation of the Fourth Amendment is his claim that Captain Croy handcuffed him for about 15 minutes incident to his arrest. In essence, Officer Butler claims that because there was not probable cause to arrest him, any use of force was excessive.

Because this Court has concluded that Captain Croy is entitled to qualified immunity on the Fourth Amendment false arrest claim, it follows, therefore, that he is also entitled to qualified immunity on the excessive force claim. Because a reasonable officer could have believed that he was acting in a constitutional manner by arresting Officer Butler, than the handcuffing of Officer Butler incident to that arrest cannot be an excessive use of force.

Accordingly, the plaintiff's § 1983 claims will be **DISMISSED**. Further, the Court will decline to exercise supplemental jurisdiction over the plaintiff's State law claims, and therefore, the plaintiff's complaint will be **DISMISSED** in its entirety. 28 *U.S.C.* § 1367(c)(3).

An order consistent with this opinion shall enter.

ENTER:

> S/J. RONNIE GREER
> UNITED STATES DISTRICT JUDGE